**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

SANDRA DANIEL,                                    Case No. 1:14-cv-775

        Plaintiff,                                Beckwith, J.
                                                  Bowman, M.J.

   v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Gwen Jackson filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents five claims of error, all of which the Defendant disputes.  For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

    **I.**      **Summary of Administrative Record**

In April and August 2010, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) alleging a disability onset date of May 1, 2008, due to mental and physical impairments.  (Tr. 374, 381).  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ").  The ALJ convened administrative hearings on August 2, 2012, November 29, 2012, and April 18, 2013.  (Tr. 8-93, 122-57). Plaintiff appeared with her counsel and testified. (Tr. 8-93, 122-57). Two independent vocational experts (VE) and an independent medical expert also testified.

(Tr. 8-93, 122-57). On June 10, 2013, the ALJ denied Plaintiff's applications in a written decision. (Tr. 97-114). Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was born in 1961 and was 51 years old at the time of the ALJ's decision. She attended college and has past relevant work as a sales account representative. (Tr. 425). She alleges disability based upon low back and neck pain, obesity, heart problems, depression and anxiety.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbosacral spine, obesity, a depressive disorder, and an anxiety disorder." (Tr. 100). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. The ALJ determined that Plaintiff retains residual functional capacity ("RFC") to perform light work with the following limitations:

> Claimant can sit for only thirty minutes at a time and stand/walk only thirty minutes at a time. Further, claimant experiences problems balancing and should not work around vibrations, heights, ladders, ropes, or scaffolds. Additionally, the claimant is limited to simple, routine, and repetitive work in an environment that does not require piecework; fast-past; or strict production quotas. The claimant's work should also involve only simple decision-making and occasional changes in a work setting. Finally, the claimant could superficially and occasionally interact with co-workers and supervisors, but never interact with the general public.

(Tr. 103). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that while Plaintiff is unable to perform her past relevant work, significant other jobs exist in the national economy that Plaintiff could perform including such jobs

as bus monitor, housekeeper/maid and inserter/folding machine operator.  (Tr.112-13).

Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the

Social Security Regulations, and is not entitled to DIB and/or SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's

decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff

argues that the ALJ erred by: 1) improperly evaluating Plaintiff's nervous and mental

impairments; 2) improperly evaluating Plaintiff's physical impairments; 3) improperly

weighing the opinion evidence; 4) improperly evaluating Plaintiff's subjective complaints

of pain; and 4) committing various vocational errors.  Upon close analysis, I conclude

that none of the asserted errors require reversal or remand.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the

definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The

definition of the term "disability" is essentially the same for both DIB and SSI.  *See*

*Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory

meaning, a "disability" includes only physical or mental impairments that are both

"medically determinable" and severe enough to prevent the applicant from (1)

performing his or her past job and (2) engaging in "substantial gainful activity" that is

available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the

court's first inquiry is to determine whether the ALJ's non-disability finding is supported

by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant

3

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

4

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Errors[1]**

*1. Evaluation of Plaintiff's mental impairments*

Plaintiff's first assignment of error asserts that the ALJ improperly evaluated Plaintiff's nervous and mental impairments. Specifically, Plaintiff argues that the ALJ's RFC did not account for the moderate limitations in concentration, persistence, or pace that the ALJ found in step 3 of the sequential analysis. Plaintiff further asserts that the ALJ erred by failing to find that her personality disorder was a severe impairment. Plaintiff's contentions will be addressed in turn.

*A. Paragraph "B" Finding*

If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq. The degree of limitation in the first three functional areas is rated using the following five-point scale:

---

[1] For the Court's convenience, Plaintiff's errors 1 -3 are combined and discussed herein under

none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id.*

As noted above, in this case, the ALJ determined that Plaintiff had moderate limitations in concentration, persistence and pace. (Tr. 102). However, Plaintiff asserts that the ALJ's RFC finding (and hypothetical questions to the vocational expert) does not sufficiently account for Plaintiff's "moderate" limitations in concentration, persistence and pace. Notably, relying on the testimony of Mary Buban, Psy.D., the medical expert that testified at the administrative hearing, as well as the opinions of the agency reviewing psychologists, the ALJ found that Plaintiff has moderate difficulties with regard to concentration, persistence, or pace. In this regard, Dr. Buban testified that the record evidence supported a diagnosis of depressive disorder and an anxiety disorder. Dr. Buban further testified that Plaintiff and her mental health counselors both described only "moderate symptom severity and limitation of function." (Tr. 110). In light of these findings, the ALJ limited Plaintiff to work involving only simple decision-making and occasional interaction with co-workers and supervisors. (Tr. 103).

Plaintiff contends that the ALJ's mental RFC should have included additional limitations based upon her moderate limitation in concentration, persistence, or pace. Plaintiff notes that Dr. Khalily, her treating psychologist at Central Community Health Board (CCHB), found that Plaintiff was unable to maintain attention for two-hour segments, sustain an ordinary work routine, and complete a normal workday and week without interruptions from psychological symptoms. (Tr. 625-626). Dr. Khalily also

---

headings 1 and 2.

found marked and extreme functional limitations relating to persistence and pace. *Id.* The ALJ, however, declined to adopt the limitations found by Dr. Khalily. Plaintiff argues that this was error.

The ALJ is required to weigh the medical opinions, and the other evidence of record, in formulating the RFC. 20 C.F.R. §§ 416.927, 416.945(a). The RFC is an administrative finding of fact of the most that a claimant can perform despite his or her medical impairments. 20 C.F.R. § 416.945(a). It is solely the province of the ALJ to formulate the RFC. *See Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004); *Henderson v. Comm'r of Social Sec.,* Civ.A.No. 08-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) ("The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole") (citations omitted). In addition, ALJs may adopt a portion of a medical opinion, if that portion is supported by the evidence but others are not. *Diemer v. Comm'r of Social Sec.*, Civ.A.No. 12-610, 2013 WL 3122246, at *9 (S.D. Ohio June 19, 2013) ("the administrative law judge, in formulating a claimant's RFC, is not required to parrot medical opinions *verbatim.* Rather, an administrative law judge may adopt portions of a medical opinion and reject others in making an RFC determination.").

In weighing the medical opinions, ALJs consider factors such as whether the physician examined or treated the claimant, whether the opinion is supported by medical signs and laboratory findings, and whether the opinion is consistent with the entire record. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, the opinion of a source who has examined the claimant is entitled to greater weight than the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). However, the ALJ may

discount an opinion that is inconsistent with the record. *Gant v. Comm'r of Soc. Sec.,* 372 F. App'x 582, 585 (6th Cir. 2010). Thus, to be entitled to controlling weight, a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and must not be "inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.

Here, the ALJ properly declined to adopt the extreme limitations assigned by Dr. Khalily, as well as the one-time evaluation of Dr. Kenford who agreed with Dr. Khalily. In so concluding, the ALJ found that Dr. Khalily's treatment notes revealed that Plaintiff was moderately limited based on her mental impairments. As noted above, Dr. Buban, the medical expert, also found that Dr. Khalily's treatment notes described only "moderate symptom severity and limitation of function." (Tr. 110). Plaintiff asserts that Dr. Khalily's notes in fact support her findings, noting panic, anxiety, depression, isolation, labile effect and restlessness. (Tr. 923, 927, 942, 945, 956, 975). However, other treatment notes from CCHB also reveal that Plaintiff was appropriately responsive and do not indicate depressed mood. (Tr. 926, 938, 953, 965, 968, 972, 981). In light of the foregoing, the undersigned finds that the ALJ properly concluded that Dr. Khaliy's treatment notes revealed that Plaintiff was moderately limited based on her mental impairments. As such, the ALJ reasonably declined to adopt Dr. Khalily's extreme findings because they were inconsistent with her own findings. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.

B. *Hypothetical Questions*

Next, citing *Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2009), Plaintiff asserts that the ALJ's RFC and hypothetical question failed to properly accommodate Plaintiff's moderate limitations due to her mental impairments. In *Ealy,* the Sixth Circuit found that where medical source opinions specifically limited Plaintiff's ability to sustain attention and imposed restrictions in pace, speed and concentration, the ALJ's "streamlined" hypothetical omitting those restrictions was insufficient. *Id.* Notably, however, several post-*Ealy* decisions declined to adopt a bright line rule that a limitation to "simple repetitive tasks" in an RFC and hypothetical to the VE is not adequate to address a claimant's moderate impairment as to concentration, persistence, and pace. *See Steed v. Astrue,* No. 4:11 CV204, 2012 WL 1097003, at *9 (N.D.Ohio Mar.30, 2012); *Jackson v. Comm'r of Soc. Sec.,* No. 1:10CV763, 2011 WL 4943966, at *4 (N.D.Ohio Oct.18, 2011). Here, no medical source imposed any restrictions relating to pace, speed and concentration that were inconsistent with the ALJ's RFC.

C. *Step-two finding*

Plaintiff further argues that the ALJ failed to find that Plaintiff's personality disorder was a severe impairment. Specifically, Plaintiff contends that Dr. Khalily and Dr. Kenford found that she suffered from a personality disorder. (Tr. 620, 624). However, it is well-establish that the mere existence of an impairment does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time. *Despins v. Commissioner of Social Security,* 257 F. App'x 923, 930 (6th Cir.2007) (citing *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir.1988)).

Notably, when the record does not contain any reports, doctor statement's or other information regarding a plaintiff's physical limitations or the intensity, frequency, and duration of pain associated with a condition, the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment. *See Long v. Apfel,* 1 F. App'x 326, 331 (6th Cir.2001) (citing *Higgs,* 880 F.2d at 860; *Maloney v. Apfel,* No. 99–3081, 2000 WL 420700 (6th Cir. Apr.14, 2000); *Foster v. Sec'y of Health & Human Servs.,* No. 88–1644, 1990 WL 41835 (6th Cir. Apr.11, 1990)).

More importantly, even if the ALJ erred in not finding Plaintiff's personality disorder to be a "severe" limitation, such error was harmless. This is because the regulations require that if one "severe" impairment exists, all impairments—severe or otherwise—must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923, 404.1545(e). Thus, where an ALJ errs in finding a particular impairment "non-severe" in step two of the analysis, the error is harmless if the ALJ finds at least one severe impairment and continues to address each impairment in determining the claimant's RFC. *Meadows v. Comm'r of Soc. Sec.,* No. 1:07cv1010, 2008 WL 4911243, at *13 (S.D.Ohio 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987)). Here, as more fully explained below, the ALJ's decision indicates that she properly considered and addressed all of Plaintiff's severe and non-severe impairments in determining his RFC. Accordingly, the undersigned finds that substantial evidence supports the ALJ's decision in this regard.

*2. Physical RFC Assessment*

Plaintiff next argues that the ALJ improperly determined that Plaintiff was capable of performing light work.  Notably, in formulating Plaintiff's RFC for light work, the ALJ assigned significant weight to the assessments offered by the state agency medical consultants.  In this regard, after considering any new or material evidence pursuant to *Drummond v. Comm'r. of Soc. Sec.*, 126 F.3d 837 (6th Cir.1997) and AR 98-4, the medical consultants adopted the prior residual functional capacity.[2]  In so concluding, the medical consultants found that Plaintiff's allegations of disabling pain appear to be wholly disproportionate to her normal clinical examinations.  In the motion recent ruling, the ALJ found these assessments to be well-supported and consistent with the substantial evidence of record.  Plaintiff, however, argues that in making this finding, the ALJ erred in failing to give controlling weight to the findings of Dr. Wunder and Dr. O'Dea, both of whom assigned limitations which would preclude light work.  Plaintiff's contentions lack merit.

Plaintiff began treating with Dr. O'Dea, a family practitioner, at Crossroads Health Center in March of 2011.  In July 2012, Dr. O'Dea completed a medical source statement wherein he opined, *inter alia,* that Plaintiff could lift 10 pounds occasionally and 5 pounds frequently and stand, sit and/or walk .5 hours in an 8-hour day. (Tr. 986). Dr. O'Dea based his findings on a July 2004 MRI of Plaintiff's cervical spine and a physical therapy evaluation performed on July 23, 2012.  *Id.*  Thus, Dr. O'Dea assigned functional limitations that would preclude even sedentary work.

---

[2] Plaintiff filed a prior application for Disability Insurance Benefits on November 18, 2003. An adverse decision was issued on January 24, 2006.

The ALJ however, determined that Dr. O'Dea's restrictive limitations were not supported by the medical treatment history.   (Tr. 109-110).   As noted by the Commissioner, objective findings only revealed degenerative changes but no neuro-compressive pathology. (Tr. 888). Dr. O'Dea's own records indicated that Plaintiff exercised two to three times per week. (Tr. 1064).  The undersigned agrees that Dr. O'Dea's findings are not supported by his treatment notes nor the objective evidence of record.   As noted above, to be entitled to controlling weight, a treating physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and must not be "inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.  As such, the ALJ properly assigned little weight to his assessment of Plaintiff's functional limitations.[3]

---

[3] Citing *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir.2009), Plaintiff also argues that the ALJ improperly relied on the assessments of the state agency medical consultants because they did not review any of the records from Dr. O'Dea.  In *Blakely*, the ALJ credited the opinions of consulting physicians over the opinion of the plaintiff's treating physician. However, in *Blakely* the court reversed on grounds that the state non-examining sources did not have the opportunity to review "much of the over 300 pages of medical treatment ... by Blakely's treating sources," and that the ALJ failed to indicate that he had "at least considered [that] fact before giving greater weight" to the consulting physician's opinions. *Blakely,* 581 F.3d at 409 (quoting *Fisk v. Astrue,* 253 Fed.Appx. 580, 585 (6th Cir.2007)) Under *Blakely,* then, an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so. If he fails to provide sufficient reasons, his opinion still may be affirmed if substantial evidence supports the opinion and any error is deemed to be harmless or de minimis. *Swartz v. Astrue,* No. 10–605, 2011 WL 4571877, at *8 (S.D.Ohio Aug.18, 2011) (Bowman, MJ) ("an ALJ may choose to credit the opinion of a consultant who has failed to review a complete record, but he should articulate his reasons for doing so") (citing *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399 (6th Cir.2009)).  Here, the ALJ reviewed the complete record and determined that the assessments of the medical consults were consistent with and well-supported by the record.

Plaintiff further asserts that the ALJ erred by failing to consider and/or adopt the functional limitations found by Dr. Wunder.  Here, the record contains treatment notes from Dr. Wunder from February 2007 through January 2009.   Dr. Wunder diagnosed lumbar degenerative disk disease, protruding disk L4-L5, cervical spondylosis, osteoarthritis and fibromyalgia.   In June 2008, Dr. Wunder noted that Plaintiff has "developed a new condition with associated right-sided radiculopathy."  (Tr. 798).  He determined this was due to a new protruding disk to the right.  In support of this determination, he refers to a supporting MRI performed in April 2008.  He further notes that Plaintiff has been off work for two months and wants to return to work.  Dr. Wunder's subsequent treatment notes reveal mostly normal examination findings, with some diminished lumbar mobility.  (*See* Tr. 727-830). Dr. Wunder recommended "conservative treatment modalities." (Tr. 827).  Plaintiff argues that the ALJ erred by failing to consider Dr. Wunder's findings as this "new condition" would affect Plaintiff's ability to stand or walk as needed for light work.  Plaintiff's contentions are not well-taken.

As noted by the Commissioner, the ALJ explained at the beginning of her decision that evidence prior to the relevant period, including any from an unadjudicated period – including Dr. Wunder's April 17, 2008 opinion – would only be considered material if it both differs from that presented in the prior claim and warrants a finding different from that made in the decision on the prior claim.  (Tr. 98). Other than citing to a "new condition" Plaintiff has failed to explain why Dr. Wunder's opinion would change the prior ALJ decision.  (Tr. 166, 788). *See also Despins*, 257 F. App'x at 930 (the mere

existence of an impairment, however, does not establish that Plaintiff was significantly limited from performing basic work activities for a continuous period of time).

For these reasons, Plaintiff's second assignment of error should be overruled.

3. *Credibility*

Plaintiff next argues that the ALJ improperly determined that Plaintiff's subjective complaints were not fully credible.  Specifically, Plaintiff argues that the ALJ's credibility finding failed to consider Plaintiff's use of strong medication, the  fact that Dr. Khaily noted that she was not a malinger, and her desire to work.  Plaintiff also argues that the ALJ did not consider Plaintiff's daily activities which often consisted of "isolating herself much of the time due to panic, anxiety or depression."  (Doc. 6 at 12).  Plaintiff's contentions are unavailing.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

 In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical

evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts

15

Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making her credibility determination.  As noted by the Commissioner, the ALJ's credibility analysis was based on the medical evidence of record, including progress notes from Plaintiff's treating physicians. (Tr. 105). For example, the ALJ noted that although Plaintiff reported disabling back pain, a September 2010 physical examination revealed normal findings, including full range of motion. (Tr. 105, 576-77). Other physical examinations revealed similar findings. (Tr. 1036, 1118-19, 1127, 1150-51). Her extreme allegations were also not corroborated by the objective evidence. For example, an April 2008 MRI revealed some multi-level degenerative disc disease, but no signs of abnormal neurocompression. (Tr. 105, 635).  The ALJ also properly considered that Plaintiff performed activities, such as shopping in public, that undermine her claim of disability. (Tr. 1088). The ALJ reasonably concluded that these activities are not consistent with Plaintiff's claim of disability. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."). The ALJ also noted Plaintiff's history of noncompliance with her medication and follow-up treatment. (Tr. 105-06). *See Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir.

16

2003) ("[T]he ALJ's consideration of Ellison's noncompliance as a factor in discrediting Ellison's allegations of disability is adequately supported . . . .").

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for her credibility finding and shows she considered the required factors in determining plaintiff's credibility. *See* 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk,* 667 F.2d at 538. *See also Cruse v. Commissioner,* 502 F.3d 532, 542 (6th Cir.2007); *Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.1997); *Gaffney v. Bowen,* 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

### 4. Alleged Vocational Errors

Plaintiff's final assignment of error asserts that the ALJ erred at Step 5 by relying on VE testimony that conflicted with the Dictionary of Occupational Titles DOT descriptions. (Doc. 6 at 13-14). Here, the vocational expert expressly testified that a hypothetical person with Plaintiff's physical and mental limitations would be able to perform the jobs of school bus monitor, laundry worker, and folding-machine operator. The ALJ inquired, "And your testimony's consistent with the DOT? The VE responded, "Yes, it is, Your Honor." (Tr. 144-145). Plaintiff argues however, that the jobs listed by the vocational expert have a DOT reasoning level of 2, which is inconsistent with simple and routine work with only one and two step instructions.

Despite this assertion, Plaintiff's counsel did not question the VE about any apparent inconsistencies between the testimony and the DOT relating to reasoning

17

levels, nor did counsel bring any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert and the ALJ had no affirmative duty under SSR 00–4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley,* 560 F.3d at 606 (citing *Martin v. Commissioner of Social Security,* 170 F. App'x 369, 374 (6th Cir.2006) ("Nothing in S.S.R. 00–4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")). Because the ALJ specifically asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform. *Id.*

Furthermore, the Sixth Circuit has indicated that the reasoning development requirements in the DOT, as well as other development requirements, are merely advisory and cannot be used to contradict VE testimony. *Matelski v. Comm'r of Soc. Sec.,* 1998 WL 381361, *6 (6th Cir. June 25, 1998); *see Monateri v. Comm'r of Soc. Sec.,* 2011 WL 3510226, *12 (6th Cir. Aug.11, 2011) ("there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications"). In any event, Plaintiff has not shown any apparent conflict between the DOT and the VE's testimmy as to the requirements of the identified jobs.

Moreover, the "D.O.T. lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." SSR 00–4p (emphasis added). In other words, the reasoning levels listed in the DOT reflect the maximum requirements for the sedentary jobs listed by the VE, and

not the range of specific requirements an individual must satisfy to perform the jobs. See *Hall v. Chater,* 109 F.3d 1255, 1259 (5th Cir.1997) (not every job identified by a VE will actually "have requirements identical to or as rigorous as those listed in the D.O.T."); *see also French v. Astrue,* No. 2:08–cv–15, 2009 WL 151525, at *8 (E.D.Ky. Jan.20, 2009) ("the DOT defaults to the highest physical demand level required by the job"). Social Security Ruling 00–4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT." SSR 00–4p.

The Sixth Circuit has also recognized that just because the DOT does not corroborate a VE's testimony that specific jobs with specific characteristics exist "does not establish that they do not exist." *Beinlich v. Comm'r of Soc. Sec.,* 2009 WL 2877930, *4 (6th Cir. Sept.9, 2009); see *Lindsley v. Comm'r of Soc. Sec.,* 560 F.3d 601, 605 (6th Cir.2009) ("The fact, therefore, that a VE and the DOT might use different terminology to describe employment positions does not establish that a conflict exists"); *see also Kepp v. Astrue,* 201 WL 3440078 (S.D.Ohio July 6, 2011) (Bowman, MJ) ("just because a VE's testimony concerning the existence of specified jobs is contrary to the precise description listed in the DOT 'does not establish [the jobs] do not exist.' ") (internal citations omitted). Thus, even assuming there was a conflict between the VE's testimony and the DOT, the ALJ could reasonably rely on the VE's testimony that Plaintiff could perform the jobs identified at step five of the sequential evaluation process. In light of the foregoing, the ALJ's decision is substantially supported in this regard.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

      *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

SANDRA DANIEL,                                              Case No. 1:14-cv-775

        Plaintiff,                                              Beckwith, J.
                                                                   Bowman, M.J.
    v.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).